# CHARLESTON.

BENJAMIN C. GRIFFIN v. THE BALTIMORE & OHIO RAILROAD
COMPANY.

(No. 5225.)

Submitted February 4, 1925.    Decided February 10, 1925.

1. MASTER AND SERVANT.

Point 1 in the syllabus of the former decision in this case, reported in 96 W. Va. 302, 122 S. E. 912, approved and applied. (p. 169.)

2. SAME—*Railroad Not Liable to Employe Injured by Sport of Co-employes.*

Where employes of a railroad company indulged in a sport on its premises at the noon hour when they were not at work, which was not dangerous as practiced, and from which an injury to any one might not reasonably have been anticipated, the company cannot be held liable for an injury resulting to an employe from such sport.    (p. 170.)

3. SAME—*Injury in Carrier's Business Essential to Recovery Under Federal Act.*

In an action under the Federal Employers' Liability Act, charging a carrier with negligence, the plaintiff cannot recover unless he was at the time of the injury doing some act required of him in the prosecution of the carrier's business. (p. 174).

4. SAME—*Federal Act Does Not Cover Negligent Acts of Employe Unconnected With Work.*

The Federal Employers' Liability Act was not intended to cover the negligent acts of an employe, in no way connected with the work he was engaged to perform.    (p. 174.)

Error to Circuit Court, Harrison County.

Action by Benjamin C. Griffin against the Baltimore & Ohio Railroad Company.    From judgment for defendant, plaintiff brings error.

*Affirmed.*

*Coffman & Morris,* for plaintiff in error.

*Hoffheimer & Templeman,* for defendant in error.

HATCHER, JUDGE:

This is an action brought by the plaintiff under the Federal Employers' Liability Act, for permanent injury to an eye.

The plaintiff was employed as a laborer in a section gang of the defendant. At the noon hour, and while not engaged in any work for the defendant, he was struck in the eye by a rock thrown by one of his fellow employes. A freight train was passing at the time. The plaintiff was on one side of the train, and the foreman, with other members of the section crew, was on the other side. Several stones were thrown by the foreman and by one or two of the other laborers with him, under and between the ends of the moving cars, one of which struck the plaintiff and destroyed the sight of an eye.

Prior to that time, the members of the section gang had, on several occasions, engaged in target practice with rocks, such as throwing at a tobacco box, or at a tree over in the field, or "across the creek," etc., but never before had they thrown rocks in the direction of each other, or under or between the cars of a train. The foreman had the right to employ and discharge the men on his section, and to direct their labors. It seems that he initiated the sport of throwing rocks under and between the cars at the time of the injury, but did not cast the stone which struck the plaintiff.

At the close of the plaintiff's evidence, the Court sustained a motion of the defendant to strike out the evidence, and the plaintiff alleges error.

This case was here on a demurrer to the declaration. It is reported in 96 W. Va. 302, 122 S. E. 912. Basing our decision upon the case of *Fletcher* v. *Baltimore & Potomac Railroad Company,* we then held:

> "Where a railroad company knowingly permits and encourages its employes to indulge in dangerous practices on its premises, although the acts of such employes are beyond the scope of their employment and totally disconnected therewith, it will be liable to one injured thereby lawfully on its premises at the time of the injury."

The reasoning which underlies this holding is, as stated in the opinion:

> "The negligence here alleged is not that of a fellow servant, but the negligence of the master, in that
> 98 W. Va.

> it permitted, encouraged and participated in dangerous 'acts of the same character as that which caused plaintiff's injury, and in the particular act complained of, and on its own premises surrounded plaintiff with dangers."

Having heretofore determined the law applicable to this case, as alleged in the declaration, our task now is to ascertain whether or not the proof in the case supports the declaration. The exact question is, could a jury fairly say that the occasional throwing of rocks at targets by the fellow-servants of the plaintiff, constituted such acts as were dangerous, and from a continuation of which, an injury to someone should have reasonably been apprehended?

There is no evidence in the case that anyone prior thereto had ever been injured or even endangered by this target practice. Most of the throwing was done by young men, several of whom were under the age of 21. Recollections of our boyhood bring to mind the impression that most boys were then fairly accurate in throwing rocks. The squall of a cat and yelp of a dog, heard occasionally now, indicate that the youth of this day are equally proficient. With no evidence to the contrary, we do not see how the jury could fairly say that the throwing of rocks at a tobacco box, or at a tree, or similar object, with no one in range of the rocks, could be a practice inherently dangerous, and which presaged injury, to some one.

The father does not usually stop his boys engaged in ordinary target practice with rocks, so long as the target is worthless, and not one another, and no danger can be apprehended from the range of the rocks. Why demand more care of a railroad company than a father exhibits toward his children? Throwing rocks, under proper circumstances, is a wholesome and commendable sport of boyhood. The accuracy with which a stone was cast upon one occasion brought deliverance to a nation, and commenced the career of one of the great characters of history. A bullet discharged from a rifle is ordinarily more dangerous than a rock thrown by a youth, yet target practice with rifles, under proper circumstances, is not considered inherently dangerous. Therefore,

so long as the target practice with rocks, which preceded the injury to the plaintiff, was done under such circumstances as indicated no danger either to the members of the section crew, or to others, how can we say that the defendant should have anticipated that a whim of youth would find sport in throwing rocks under and between moving cars? We had as well say that the plaintiff should have anticipated such an occurrence and kept out of the way of the stones as to charge the defendant with such prescience.

We held also in this case, when it was here before, that:

> "The master is not compelled to foresee and guard against an accident which reasonable and prudent men would not expect to happen, nor to warn his servant of dangers not reasonably to be anticipated."

The inferences in this case may be clearly differentiated from those in the Fletcher case. There, the plaintiff had paused momentarily at the intersection of two streets in the city of Washington, when a repair train passed him on its return from work for the day. The facts surrounding the injury, as stated in the opinion, are as follows:

> "Some of the testimony showed that the train was passing at the rate of twenty miles an hour, while other testimony showed a much less rate of speed. As the train passed the plaintiff one of the workmen on board threw from the car on which he was standing a stick of bridge timber about six inches square and about six feet long. It struck the ground and rebounded, striking the plaintiff and seriously and permanently injuring him. The defendant had been in the daily habit for several years of running out of Washington and Alexandria a repair train of open flat cars loaded with its employes, and the train returned every evening about six o'clock and brought the workmen back to their homes. These men were allowed the privilege of bringing back with them, for their own individual use for firewood, sticks or refuse timber left over from their work after repairing the road, such as old pieces of bridge timber, cross-ties, etc. It was the constant habit of the men during all these years to throw off these pieces of firewood while the train was

in motion at such points on the road as were nearest
their homes, where the wood was picked up and
carried off by some of the members of their families
or other person waiting there for it.''

In the Fletcher case, the wood was thrown into the streets
of a great city, which were used by people and where one
would naturally expect people to be. In this case, the target
practice occurred out in the country, along the grade of the
railroad, and in an old field nearby, etc., where people did
not ordinarily congregate. In the Fletcher case, the heavy
timbers thrown from a moving train could not be controlled
with any degree of accuracy whatsoever. In this case, with
our knowledge of the skill which youths ordinarily have in
casting stones, we infer that the direction of the stones could
be controlled with a fair degree of accuracy. It was logical
for the court in the Fletcher case to hold it a fair presumption
that the continued throwing of heavy and uncontrolled objects
into the streets of a city would ultimately lead to the injury
of some one. It would be clearly illogical to hold in this case
that the throwing of stones in ordinary target practice in the
country at objects which could be clearly seen, and where
people were not likely to be, was a practice fraught with
danger.

Under this view, it matters not whether the throwing of
stones prior to the injury had been only occasional, as the
defendant claims, or habitual, as the plaintiff contends. If
the practice was not one foreshadowing injury, our holding
on the demurrer does not now apply.

But, says the plaintiff, even if the prior target practice was
not dangerous, *the throwing of rocks under and between the
cars of a train was dangerous;* that such throwing was done
in the presence of, and with the knowledge of, the foreman
of the defendant; that the foreman was the representative of
the company; that notice to him was notice to the company,
and that, upon his failure to stop the throwing, the company
became liable for the resultant injury.

This argument is based upon the theory that the foreman,
by reason of his right to hire, discharge, and direct the men,
was a vice-principal. We have held that the relation of vice-

principal is to be determined by the character of the negligent act, and not by the grade or the rank of the servant, and that the negligence of a superior servant is the negligence of the master only when that negligence pertains to a non-assignable duty of the master.

> "The foreman of a crew of laborers employed to work in a stone quarry, who has power to employ and discharge men and to direct their work, is, nevertheless, only a fellow servant, unless his negligence relates to some non-delegable duty which the master owed to the injured servant. Whether a superior servant is a vice-principal ·depends upon the nature of his negligent act, and not upon his grade or rank."
>
> > *Miller* v. *Limestone Co.,* 70 W. Va. 643.

The non-assignable duties of the master are clearly set out and discussed in the opinion of the Supreme Court of the United States, in *Northern Pacific Railroad* v. *Peterson,* 162 U. S. 346, as follows:

> "There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many States that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters it is a neglect of a duty which he personally owes to his employes, and if the employe suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect· of the other, which, in such case, is not the neglect of a fellow-servant, no matter what his position as to

other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

The neglect of duty chargeable by the plaintiff to the defendant in this case is not the neglect of a non-assignable duty of the master. It was not a neglect of duty relating either to the place of work, the tools to work with, the fellow-servants, or rules of conduct. The injury to plaintiff grew out of a circumstance which could not have been foreseen and against which the master could not have been reasonably expected to formulate a rule. It was, also, in no wise connected with the employment of the plaintiff or the duties of his fellow-servants. The position that the foreman occupied at the time of the injury to plaintiff was simply that of a fellow-servant, and not that of a vice-principal.

"This boss of a small gang of ten or fifteen men, engaged in making repairs upon the road wherever they might be necessary, over a distance of three sections, aiding and assisting the regular gang of workmen upon each section as occasion demanded, was not such a superintendent of a separate department, nor was he in control of such a distinct branch of the work of the master as would be necessary to render the master liable to a co-employee for his neglect. He was, in fact as well as in law, a fellow-workman; he went with the gang to the place of work in the morning, stayed there with them during the day, superintended their work, giving directions in regard to it, and returned home with them in the evening, acting as a part of the crew of the hand-car upon which they rode. The mere fact, if it be a fact, that he did not actually handle a shovel or a pick, is an unimportant matter. Where more than one man is engaged in doing any particular work, it becomes almost a necessity that one should be boss and the other subordinate, but both are nevertheless fellow-workmen."

*Northern Pacific Railroad* v. *Peterson,* supra.

In cases under the Federal Employers' Liability Act (not based on previous dangerous acts like the one causing an injury), the great weight of authority is that an employe

cannot recover for an injury unless the injury occurred while he was engaged in the actual work of the master.

> "A carrier is not liable for every act of negligence causing injury to one employe by another. The negligent act causing the injury must have been committed while the employe at fault was in the prosecution of the carrier's business; for, when an employe voluntarily and without necessity growing out of his work abandons the employment and steps entirely aside from the line of his duty, he suspends the relation of employer and employe. When the negligent act which causes an injury to or the death of an employe had no relation whatever to the employment, the carrier is not liable, for the employe at fault must have been, when committing the act, within the scope of his employment. And if an employe is injured or killed at a time and place and from a cause disconnected with his employment for the carrier, the carrier is not liable, for the statute requires the servant injured to have been at the time employed in interstate commerce. In *Reeve* v. *Northern P. Ry. Co.*, cited in the notes, plaintiff was a laborer in the employ of the railroad company, and, as a part of his duties, supplied baggage cars of the defendant with water and fuel. When injured he was sitting on the floor of a baggage car in the door with his feet hanging outside of the door resting on the iron steps or stirrups which hung below. While so sitting two other employees of the company began wrestling or scuffling in the body of the car, and while so engaged, whether intentional or not did not appear in the evidence, one of them brushed against or pushed the plaintiff, causing him to fall to the ground, and he sustained injuries. Under these facts, in an action under the Federal Employers' Liability Act, the court, in denying a recovery, held that a railroad company was not liable unless the negligent act occurred while the employes were doing some act required of them in the prosecution of the carrier's business and that the federal statute was not intended to cover negligent acts of an employe in no way connected with the business, the prosecution of which he was employed to aid.

> Roberts Federal Liabilities of Carriers, page 936, para. 537. (With abundant citation in the notes to support the text.)

In the Reeve case (reported in 144 Pacific 63), referred to in the above quotation, the injury was caused by the wrestling and scuffling of fellow-servants, presumably at play. In this case, the injury to plaintiff resulted from the play or sport of his fellow-servants. We think the law governing the Reeve case applies with equal force to this case.

We said in *Hull* v. *The Virginian Railway Company*, 78 W. Va. 25: "Under the Federal Employers' Liability Act, a carrier's liability depends on negligence." Finding no evidence in this case from which the jury could attribute negligence to the defendant, the judgment of the circuit court is affirmed.

. ' <em>Affirmed.</em>