## YOUNG, Plaintiff-Appellant, v. NEW YORK CENTRAL RAILROAD CO., Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21232.   Decided July 18, 1949.

Payer, Bleiweiss, Crow & Mollison, Cleveland, for plaintiff-appellant.

J. Paul Lamb, Cleveland, for defendant-appellee.

## OPINION

By HURD, J.

This case sounding in tort originated in the common pleas court of Cuyahoga county where the appellant, Augustin F. Young, a railroad signalman brought his action under the Federal Employers Liability Act against the appellee, The New York Central Railroad Company, his employer, for damages for personal injuries sustained by him as the result of an alleged unprovoked attack made upon him by a fellow worker.

At the close of all the evidence, the court granted defendant's motion for a directed verdict and rendered judgment thereon.

Whereupon a motion for new trial having been overruled, an appeal was perfected to this court on questions of law.

The parties will hereinafter be designated as 'plaintiff' and 'defendant' as they appeared in the trial court.

The gravaman of plaintiff's complaint is that the defendant was negligent in retaining in its employ a dangerous and vicious man with knowledge of these propensities and characteristics and in failing to provide plaintiff with a safe place to work.

While the record shows a conflict in respect of the facts of the altercation which led to the assault, the trial court for the purposes of the motion to direct a verdict, was obliged to accept as true the evidence of the plaintiff and also to construe it most favorably to plaintiff and in this court, upon this appeal, the plaintiff is entitled to the most favorable interpretation of the facts in his favor and all inferences which may reasonably be drawn therefrom.

A brief summary of the evidence interpreted most favorably to the plaintiff, is as follows:

Plaintiff, Young, 50 years of age, married and the father of four children, had been employed by defendant, The New York Central Railroad Company, continuously since he was 19 years of age, as a tower-man or signalman. His duties required him to give signals with respect to the right of way at the intersection of several railroad lines through the pulling or operating of certain mechanical levers.

During the year 1943, he was assigned to what is known as the C & P crossing at the old Union Depot, Cleveland, Ohio, where the Pennsylvania railroad tracks intersect with tracks of the New York Central Railroad. At the time of the matters complained of, his working shift covered the period from 11 o'clock P. M. until 7 o'clock A. M. He reported to and performed his duties in a small shanty 5' x 9' containing a small stove, a clothes locker, a telephone and a small desk. Each night he relieved one James Johnson, the person who assaulted him, who was the lever-man at this shanty on the shift which commenced at 3 o'clock P. M. and terminated at 11 o'clock P. M. Prior to the night of Nov. 29, 1943, when the alleged wanton and unprovoked attack was made, plaintiff had only a casual acquaintance with Johnson.

Plaintiff testified that Johnson and he had no physical encounters and no words and no trouble of any sort during the year that Young relieved Johnson prior to the night of Nov 29, 1943, except that he had reported late a few times in relieving Johnson; on one occasion about 45 minutes late, and on another occasion about one minute late, and on the

night of the attack he reported about four minutes late. He testified that on the occasion when he was 45 minutes late he paid Johnson 60c in cash to compensate him for the overtime service, but otherwise they had no trouble at all and they "got along all right."

On the night of Nov. 29, 1943, plaintiff's automobile developed a flat tire enroute to work, and he arrived about four minutes after 11 P. M. Johnson was waiting outside the shanty as Young appeared. According to Young's testimony, he apologized for being late and he explained he had trouble with his automobile and thereupon he proceeded to the shanty with Johnson following him. As plaintiff was removing his jacket, Johnson shouted "I warned you not to come late * * * hurry up now, get to work." Johnson reached for plaintiff's jacket and appeared to be attempting to pull it off. What appeared to be a mere jerking by Johnson of plaintiff's jacket, was, according to plaintiff's testimony, in fact repeated stab wounds in his chest and abdomen. In the struggle which ensued, the plaintiff was severely cut and stabbed in the region of his chest, abdomen and legs. According to plaintiff's testimony, he was able to save his life by striking Johnson several blows with a stove poker and thereupon he escaped from the shanty and called a Pennsylvania railroad crew nearby for help. Plaintiff was hospitalized for a number of days under oxygen and underwent two operations. He was confined to a hospital for one month and at home in bed another month. He returned to work in April, 1944, and is now employed in the same position by the defendant company.

Plaintiff introduced evidence of prior assaults, upon other employees of the company by Johnson, about seven or eight in number, and introduced testimony showing that repeated reports had been made concerning Johnson's conduct in this respect, to the wire despatcher and to Supt. Crotser, both of whom were his and Johnson's superiors and persons in authority to whom such reports should have been addressed. While it was denied by Supt. Crotser that he had received any reports about Johnson's misconduct, nevertheless, for the purpose of this review, we must, as stated, assume that notice was brought to the company concerning the previous course of Johnson's conduct as indicated by the incidents described in the evidence.

As we view this case, the principal question presented is whether the facts shown in the record interpreted and construed most favorably to plaintiff, are sufficient to establish

liability of the railroad company under the Federal Employers Liability Act. The pertinent and applicable provision of the Act is as follows:

"Every common carrier by railroad, while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier. * * *." U. S. C. A. Sec. 51.

From the foregoing, it is clear that under the Federal Employers Liability Act liability arises from negligence and the burden rests upon plaintiff to prove that the negligence of the railroad company was in whole or in part a proximate cause of the injury for which recovery is prayed.

Cases involving circumstances similar to those of the instant case Have heretofore been considered and decided by the Federal Courts and the interpretation placed upon the Federal Employers Liability Act by such decisions must be followed by this court in the instant case insofar as they are applicable.

In the case of Davis v. Green, 260 U. S. 349, 43 Sup. Ct. 123, 124 the Supreme Court of the United States reversed the Supreme court of Mississippi which had affirmed the lower court decision holding the railroad company liable where an employee who was a conductor, had been killed by an engineer, a fellow employee of decedent, where the evidence disclosed that the company had employed a dangerous man with notice of his dangerous propensities.

Mr. Justice Holmes, speaking for the court, said:

"The ground on which the railroad company was held was that it had negligently employed a dangerous man with notice of his characteristics and that the killing occurred in the course of the engineer's employment. But neither allegations nor proof present the killing as done to further the master's business, or as anything but a wanton and willful act done to satisfy the temper or spite of the engineer. Whatever may be the law of Mississippi, a railroad company is not liable for such an act under the statutes of the United States." (Emphasis ours.)

To the same effect is the later decision of the United States Supreme Court in the case of Atlantic Coast Line Railroad

v. Southwell, 275 U. S. 265, 48 Sup. Ct. 25, which involved similar facts.

The following cases follow the same reasoning: St. Louis San Francisco Railroad v. Mills, 271 U. S. 344 (1926); Atlanta & Charlotte Air Line Railroad v. Green, 279 U. S. 821 (1929), reversing per curiam 151 S. C. 1, 148 S. E. 633.

Counsel for plaintiff apparently recognizing the force of the foregoing decisions argue that these cases were decided prior to 1939 at which time the Federal Employers Liability Act was amended in such a manner as to abolish the defense of voluntary assumption of risk and that therefore these cases have no application to facts such as are disclosed by the record in the instant case.

In our opinion, this contention cannot be sustained because in the cases cited the Supreme Court did not predicate its decisions on the defense of assumption of risk. The gist of these decisions is generally to the effect that the railroad company is not liable unless the attack or act complained of was done to further the railroad company's business even though the act may have occurred in the course of the actors employment.

In our opinion, the attack made upon the plaintiff in the instant case could not be considered as an act in furtherance of the employer's business on the most liberal interpretation in favor of the plaintiff. On the contrary, the facts in the present case show a wanton, malicious, unprovoked attack done "to satisfy the temper or spite" of the fellow employee.

Plaintiff places great reliance upon the recent case of Lillie v. Thompson, Tr. 332 U. S. 459. In that case a per curiam opinion of the Supreme Court reversed the District Court and the Circuit Court of Appeals which had affirmed the decision of the District Court, dismissing the petition of plaintiff for failure to state a cause of action. The court said in part:

"Petitioner's allegations may be summarized as follows:

Respondent required her, a 22 year old telegraph operator to work alone between 11:30 P. M. and 7:30 A. M. in a one-room frame building situated in an isolated part of respondent's railroad yards in Memphis. Though respondent had reason to know the yards were frequented by dangerous characters, he failed to exercise reasonable care to light the building and its surroundings or to guard or patrol it in any way. Petitioner's duties were to receive and deliver messages to men operating trains in the yard. In order for the train-men to get the messages, it was necessary for them to come to

the building at irregular intervals throughout the night and it was petitioner's duty to admit them when they knocked. Because there were no windows in the building's single door or on the side of the building in which the door was located, petitioner could identify persons seeking entrance only by unlocking and opening the door. About 1:30 A. M. on the night of her injury petitioner responded to a knock, thinking that some of the respondent's trainmen were seeking admission. She opened the door and before she could close it a man entered and beat her with a large piece of iron, seriously and permanently injuring her.

In support his motion for summary judgment, respondent alleged and petitioner did not deny, that the assailant was not an employee of respondent and that the attack was criminal. We are of the opinion that the allegations of the complaint, if supported by evidence, will warrant submission to a jury. Petitioner alleged in effect that respondent was aware of the physical conditions which created a likelihood that a young woman performing the duties required of petitioner would suffer just such an injury as was in fact inflicted upon her. That the foreseeable danger was from intentional or criminal misconduct, is irrelevant; respondent nonetheless had a duty to make reasonable provision against it. Breach of that duty would be negligence and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence."

When the case was remanded to the district court, the jury returned a verdict for plaintiff in the sum of $7500.00. The appellee entered a motion for judgment notwithstanding the verdict, which the court sustained and dismissed the suit. An appeal was had again to the United States Circuit Court of Appeals, Sixth District, which reversed the district court.

It is obvious, we think, that there is no analogy between the facts of Lillie v. Thompson, and the present case. But is there analogy in principle? We think not.

In the second appeal in the Lillie case, the court of appeals in reversing the second judgment of the district court, stated as follows:

"The gravaman of her claim (Lillie) was that appellee ordered her to a place of work which they knew, or by the exercise of reasonable care, should have known to have been unsafe and without taking reasonable care for her protection."

The second paragraph of the syllabus (173 Fed. 2d, 481) is as follows:

"Evidence that railroad superintendent placed female telegraph operator for work at a place which by exercise of **reasonable prudence he should have known as one of peculiar hazard for a female employee, and that thereafter a negro not employed by railroad criminally attacked the operator,** authorized recovery by operator from railroad under Federal Employers Liability Act, for injuries which she sustained. Fed. Employees Liab. Act. Sec. 1, 45 U. S. C. A. 51." (Emphasis ours.)

We think that the emphasis in the Lillie case is placed, first, upon the fact that plaintiff was a young girl 22 years of age who was criminally attacked under conditions which created a peculiar hazard for a female employee, and second, the fact of the physical condition and location of the building in which she was obliged to work, and third, the fact that her working hours were required to be between 11:30 P. M. and 7:30 A. M., and fourth, in a place which was infested by "thieves, tramps, hoboes and other trespassers." The gist of the decision of the Supreme Court and later the Circuit Court of Appeals on the second appeal, is that by the exercise of reasonable prudence, Thompson, the trustee of the railroad company, should have known the dangers inherent in such a peculiar situation.

The doctrine of the Lillie case must, we think, have limited application to cases of a similar factual nature. We cannot agree with the contention of plaintiff that on principle the same issues are involved in that case as in the instant case.

We are further of the opinion that the decision of the Supreme Court in the Lillie case has not repudiated, either expressly or impliedly, the doctrine of Davis v. Green and following cases of factual analogy.

We find our conclusion in this respect to be in harmony with the case of Schaef v. Minn. St. P. & S. S. M. Railroad et al, decided by the Circuit Court of Appeals 8th District, June 18, 1947, 162 Fed. (2d) 110, syllabus 4 of which is as follows:

"Where complaint of railroad conductor against railroad under Federal Employers Liability Act, for injuries sustained as a result of alleged unprovoked attack by a railroad engineer alleged that engineer had been quarrelsome and vicious person for many years prior to assault and that railroad had knowledge thereof, or by exercise of ordinary care should have

**8**

known of it and that railroad ratified acts of engineer by retaining him in service, no genuine issue of negligence was stated in complaint such as would preclude summary judgment for railroad. Federal Rules of Civil Procedure Rule 12, 56, 28 U. S. C. A. following Sec. 723-c; Fed. Employ. Liab. Act. Sec. 1, 45 U. S. C. A. Sec. 51."

Neither do we think that the seamen's cases under the Jones Act cited by the plaintiff have application here. We think it unnecessary to review these cases at length as this proposition has been passed upon many times before in decisions of Federal Courts.

As stated in the case of Sheaf v. Minn. St. P. S. S. M. Railroad, 162 Fed. 2d, 110 at page 114:

"The appellant argues, however, that the Davis and Southwell cases, supra, have been overruled in effect by a more liberal construction of the Act by the Supreme Court and the courts of appeal in such cases as Jamison v. Encarnacion, 281 U. S. 635, 50 S. Ct. 440, 74 L. Ed. 1082; Baltimore & Phila. Steamboat Co. v. Norton, 284 U. S. 408, 52 S. Ct. 187, 76 L. Ed. 366; and Koehler v. Presque Isle Transp. Co. 2 Cir. 141 F. 2d, 490.

These cases are all distinguishable from the Davis and Southwell and other like cases, in that they arose among seamen employed on vessels operating upon navigable waters. In such cases the duties of the employer to its employees are different, giving rise to a broader or more liberal construction of the statutes applicable. This fact was pointed out by Mr. Justice Stone in Socony-Vacuum Oil Co. v. Smith, 305 U. S. 424, 430, 431, 59 S. Ct. 262, 266, 83 L. Ed. 265, wherein he said:—

'The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman. His complaints to superior officers of unsafe working conditions not infrequently provoke harsh treatment. * * * withal, seamen are the wards of the admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of common law which would affect them harshly because of the special circumstances attending their calling. (Citations) It is for this reason that remedial legislation for the benefit and protection of seamen has been liberally construed to attain that end.' "

Neither do we think that the doctrine of respondent superior applies as contended by plaintiff. This could only be upon the theory that the assault was committed by Johnson "in furtherance of the master's business." We have hereinbefore stated that under the most liberal construction of the evidence the attack in question cannot be considered "in furtherance of the employer's business."

This is not a case of first impression under federal court decisions. Therefore we are obliged to follow the decisions of the Supreme Court of the United States in cases hereinbefore cited interpreting liability under the Federal Employers Liability Act. The later analogous decisions of Federal Circuit Courts of Appeals which are unreversed and unmodified are likewise persuasive of this view.

We conclude, therefore, that the judgment of the Court of Common Pleas must be affirmed.

Judgment affirmed. Exceptions. Order see journal.

SKEEL, PJ, concurs, McNAMEE J, concurs in judgment.