MOORE *v.* TERMINAL RAILROAD
ASSOCIATION OF ST. LOUIS.

No. 208.   Decided October 13, 1958.

*Roberts P. Elam* for petitioner.

*Lyman J. Bishop* for respondent.

PER CURIAM.

The petition for writ of certiorari is granted. The judgment of the Supreme Court of Missouri is reversed and the case is remanded for proceedings in conformity with this opinion. We hold that the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury. *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500; *Webb* v. *Illinois Central R. Co.,* 352 U. S. 512; *Shaw* v. *Atlantic Coast Line R. Co.,* 353 U. S. 920; *Futrelle* v. *Atlantic*

31

*Coast Line R. Co.*, 353 U. S. 920; *Deen* v. *Gulf, C. & S. F. R. Co.*, 353 U. S. 925; *Thomson* v. *Texas & Pacific R. Co.*, 353 U. S. 926; *Arnold* v. *Panhandle & S. F. R. Co.*, 353 U. S. 360; *Ringhiser* v. *Chesapeake & O. R. Co.*, 354 U. S. 901; *McBride* v. *Toledo Terminal R. Co.*, 354 U. S. 517; *Gibson* v. *Thompson*, 355 U. S. 18; *Honeycutt* v. *Wabash R. Co.*, 355 U. S. 424; *Ferguson* v. *St. Louis-San Francisco R. Co.*, 356 U. S. 41.

MR. JUSTICE HARLAN concurs in the result for the reasons given in his memorandum in *Gibson* v. *Thompson*, 355 U. S. 18, 19. See also his dissenting opinion in *Sinkler* v. *Missouri Pacific R. Co.*, 356 U. S. 326, 332.

For the reasons set forth in his opinion in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 524, MR. JUSTICE FRANKFURTER is of the view that the writ of certiorari was improvidently granted.

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE BURTON joins, dissenting.

In my view the record does not contain any evidence of negligence by respondent, but instead it affirmatively shows that the sole cause of petitioner's injury was his own negligent act. Hence, I think the Supreme Court of Missouri was right in holding that there was nothing to submit to a jury.

The undisputed facts, principally physical facts, are these. Respondent's tracks run in pairs to the south from a point just outside the waiting room of its Union Station in St. Louis. Between each pair of tracks is a concrete loading platform designed for the use of passengers in walking, and of respondent's employees in transporting baggage, to and from trains. The platform between tracks numbered 4 and 5 is the scene of this occurrence. It is about 18 inches high, 14 feet 1⅜ inches wide and 1,800

feet long. It is under a roof supported by metal posts 14 inches in diameter located down the center of the platform at 30-foot intervals. At the time of this occurrence a train was standing on track 4 abutting the west side of the platform, and an incoming train was being backed north toward the waiting room along the east side of the platform on track 5. Petitioner, who was employed by respondent as a baggage handler, was on this platform for the purpose of transporting baggage from the incoming train. He was using a hand cart, referred to in the evidence as a "flat wagon," which was 14 feet 8 inches long (including the handlebars at either end), 3 feet 8 inches wide, and supported in the center by an axle riding on two 26-inch wheels, operating both as a fulcrum and a pivot. Being some distance south of the point at which the baggage car was to be stopped for unloading, petitioner started pulling his cart to the north along the east side of the platform and adjacent to the moving train. After so proceeding a short way, he observed a 4-wheel wagon standing on the east side of the platform, slightly north and east of one of the roof supports, making it necessary for him to turn his cart to the left and to pass on the west half of the platform. At that time another hand cart, a few feet to the left and ahead of him, was also being moved to the north over the west half of the platform. In changing the course of his cart, petitioner pulled its north end to the west at such an angle as caused its south end to be pivoted and swung to the east against the third car of the moving train which, in turn, caused him to be thrown to the west against a car standing on track 4 and to be injured. Other wagons were on the platform but were either some distance behind or ahead of petitioner and had no connection with this occurrence.

It cannot be, and is not, denied that the casualty resulted solely from the collision of the cart with the moving

train. What caused this to happen? Petitioner admits that it was the turn of the cart that did so. He also admits that the turn was made by his own hand. How then may it be said that any act of respondent caused or contributed to cause the south end of the cart to collide with the moving train? Petitioner attempts to attribute his conduct in some way to the presence of the other hand cart which was being pulled to the north a few feet ahead and to the west of him, saying that except for its presence he "could have made that turn easy." Yet he admits not only that there was no contact between that cart and his, but also that it was moving ahead and away from him. Surely the presence of that moving cart at that place did not constitute negligence. Do not these admitted and indisputable physical facts show that the casualty was not one "resulting in whole or in part from the negligence of" respondent? Do they not show that the casualty was one "resulting in whole" from the negligence of petitioner? The Federal Employers' Liability Act does not create liability without fault. Liability under the Act is predicated on both negligence and causation. By the plain words of § 1 of the Act a railroad is made liable for injuries to its employees *"resulting* in whole or in part from [its] *negligence."* (Emphasis added.) 53 Stat. 1404, 45 U. S. C. § 51. "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury." *Ellis* v. *Union Pacific R. Co.,* 329 U. S. 649, 653. I submit that the simple facts recited do not show even a "scintilla" or an "iota" of evidence, to say nothing of any substantial evidence, of negligence by respondent. Instead, I insist, they affirmatively show that it was petitioner's own act in turning the cart at

such an angle as brought its south end into collision with the moving train that was exclusively "the cause of the injury." *Ibid.*

To hold that these facts are sufficient to make a jury case of negligence under the Act is in practical effect to say that a railroad is an insurer of its employees. Such is not the law. For these reasons I dissent.