## ATLANTIC COAST LINE RAILROAD COMPANY, Appellant,

v.

## H. W. MASSENGILL, Appellee.

### No. 7789.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 23, 1959.

Decided March 9, 1959.

Collins Denny, Jr., Richmond, Va. (Denny, Valentine & Davenport, Richmond, Va., and Russell T. Bradford, Norfolk, Va., on the brief), for appellant.

William F. Davis, Suffolk, Va. (Woodward, Ferguson & Davis, Suffolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and PAUL and BOREMAN, District Judges.

SOBELOFF, Chief Judge.

The only question put to us on this appeal is whether the District Judge erred in submitting the case to the jury. The action is one brought by a section foreman of the Atlantic Coast Line Railroad Company against his employer under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the loss of an eye, for which he was awarded $7,500. The appellant's contention, appropriately raised by motions at various stages of the proceedings, is that there was not sufficient evidence of its negligence to raise an issue for the jury.

Massengill, the plaintiff, was in the employ of the defendant railroad for many years, and from 1942 was one of its section foremen. When injured on October 4, 1956, he was with his gang of workmen as usual, but on that day he had with him, in addition, the two-man crew of a "Matisa tamper," a machine for tamping ballast around railroad ties. The tamper machine, with the operator seated in the center, operates under its own power on the railroad track. On each side of the machine are eight metal feet, arranged in sets of four; two feet in each set come down on the inside of the rail and two on the outside. The feet are driven down into the ballast on both sides of the tie, and are then brought together to pinch the ballast in closely under the tie. Operated under air pressure, the feet strike the ballast with great force and as a consequence wear out frequently and must be replaced.

The machine is so constructed that replacement of the feet can ordinarily be effected rather simply. The top of each foot is tapered to fit into a sleeve. Normally, when the sleeve is loosened by turning a bolt, the foot will fall out. Sometimes, however, the foot becomes jammed in the sleeve and will not come free even if hammered. When this happens, the standard procedure is to insert a tapered drift pin into an oval hole which is provided in the sleeve for this purpose, and then strike the pin with a hammer to force the foot out of the sleeve.

The tamping machine had been delivered to the plaintiff's section two days before the accident, and had been used the day before. On the afternoon before the injury, Massengill instructed the operator of the machine to change the feet, but when the plaintiff and his crew arrived on the next morning, they found that one worn foot had not been removed. The machine's operator and his helper tried to free the jammed foot by hammering upon it. When this failed, one of them took a drift pin from the tool box on the machine and inserted it in the slot above the jammed foot but, when hit with a hammer, the pin broke in half. Another pin was obtained and placed in the slot. This time Richard Rhodes, one of the laborers in plaintiff's gang, hit the pin with a sledge hammer, but it fell to the ground without dislodging the foot.

At this point Massengill approached the tamper, picked up the pin, and replaced it in the slot. As he started to back away, and had proceeded about ten or twelve feet, he stumbled over the feet of a laborer. Meanwhile, Rhodes, without paying any attention to the plaintiff's proximity, (although he knew that Massengill, like himself, was wearing no goggles,) struck the pin a second blow. A small piece of the pin chipped off and entered the plaintiff's eye, causing the loss of that organ.

■ Involved here, essentially, is an interpretation of this unique set of facts, not a dispute over legal principles. The principle has been stated many times, and the formulation in Rogers v. Missouri Pacific Railroad Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, will do as well as any. There the Supreme Court said:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence."

The rule is clear enough; the difficulty is in its application.

The attorneys for the respective parties have cited and discussed in their briefs and oral arguments the many notable decisions of the Supreme Court in federal employers' liability cases written during the past two decades, and es-

pecially in the past two years.[1] Although it would be professionally intriguing to review the cases here, such review could throw little direct light upon our immediate problem. This is true because the adjudicated cases differ, one from another, and the factual context here so little resembles any to be found in the cases that have gone before.

Upon the facts above recited, which the defendant does not controvert, the plaintiff based two charges of negligence against the railroad; first, that the tamping machine was defective, and second, that the pin was struck in a negligent manner.

■ We are not prepared to say that there was evidence from which a jury could reasonably find negligence in respect to the condition of the tamper itself. In normal use the feet of the tamper were expected to become worn. Nor is negligence apparent in making use of a drift pin to remove a worn foot from its sleeve, or in striking the pin with a hammer.

■■ Plaintiff's counsel argued that there was negligence in the very manner of striking the pin, that is to say that the angle at which the hammer struck the pin was improper; and it is suggested that because the pin was not squarely hit, it was shattered. We perceive no reasonable basis for a conclusion of negligence in this regard; a man swinging a sledge hammer is not to be held to the delicate precision one may expect of a watchmaker. But a jury could reasonably conclude that Rhodes acted with less than reasonable care in failing to observe the plaintiff's position, and in proceeding to strike the pin without waiting for the plaintiff to reach a place of safety—in other words, that the timing of the hammer blow was negligent.

■■ The defendant's brief asserts: "Under our society, railroad work must be carried on. It cannot in the nature of things be made safe in the sense that office work is safe. It cannot be conducted without use of tools and machinery. Inherently there is danger in certain operations." The defendant's contention borders upon an assertion of the common law defense of assumption of risk which Congress has abolished in this type of action. While there may be an inherent danger of an iron pin splintering when struck by an iron hammer, and this danger may be unavoidable, it is not unforeseeable; and a duty falls upon the person striking the pin to take reasonable precautions to avoid injuring nearby persons. It is true that the employer has no liability if he has not been negligent, but the employee's recovery is not

1. A comprehensive list of decisions relating to sufficiency of the evidence under the Federal Employers' Liability Act is appended to Mr. Justice Frankfurter's dissent in Rogers v. Missouri Pacific Railroad Co., 1957, 352 U.S. 500, 549, 77 S.Ct. 443. On the same day that the Rogers case was decided, the Court also handed down opinions in Webb v. Illinois Central Railroad Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503; Herdman v. Pennsylvania Railroad Co., 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508; and Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511. Since then the Court has decided—Arnold v. Panhandle & Santa Fe Railway Co., 1957, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed. 2d 889; Shaw v. Atlantic Coast Line Railroad Co., 1957, 353 U.S. 920, 77 S. Ct. 680, 1 L.Ed.2d 718; Futrelle v. Atlantic Coast Line Railroad Co., 1957, 353 U.S. 920, 77 S.Ct. 682, 1 L.Ed.2d 718; Deen v. Gulf, Colorado & Santa Fe Railway Co., 1957, 353 U.S. 925, 77 S.Ct. 715, 1 L.Ed.2d 721; Gibson v. Thompsen, 1957, 355 U.S. 18, 78 S.Ct. 2, 2 L. Ed.2d 1; Thomson v. Texas & Pacific Railroad Co., 1957, 353 U.S. 926, 77 S. Ct. 698, 1 L.Ed.2d 917; McBride v. Toledo Terminal Railroad Co., 1957, 354 U.S. 517, 77 S.Ct. 1398, 1 L.Ed.2d 1534; Ringhiser v. Chesapeake & Ohio Railroad Co., 1957, 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268; Stinson v. Atlantic Coast Line Railroad Co., 1958, 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed.2d 93; Honeycutt v. Wabash Railway Co., 1958, 355 U.S. 424, 78 S.Ct. 393, 2 L.Ed.2d 380; Ferguson v. St. Louis-Santa Fe Railway Co., 1958, 356 U.S. 41, 78 S.Ct. 671, 2 L.Ed.2d 571; Moore v. Terminal Railroad Association of St. Louis, 1958, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 25.

defeated by the fact that the negligence shown is that of a fellow servant.

■ It was pressed upon us that in none of the F. E. L. A. cases adjudicated by the Supreme Court, did the court go so far as to sustain liability where the plaintiff's injury resulted from an act done by one under his direction. The answer seems to us obvious. The plaintiff did not direct Rhodes to strike the pin at the precise moment when he did, and if Rhodes was negligent in failing to give the plaintiff sufficient opportunity to move out of the way, not the plaintiff but the defendant is legally answerable.

■ With great earnestness the defendant maintains that the real cause of the plaintiff's misfortune was his own want of due care in failing to use the available goggles, and that the act of the man who swung the hammer was a mere incident, not the proximate cause, of the injury. The defendant thus insists that the injury was caused by an independent intervening cause, namely, the plaintiff's own negligence in failing to obey a rule [2] of the company in regard to the use of goggles. For the plaintiff it is argued that the rule is vague and should not be construed to apply to one not regularly engaged in work requiring protection of the eyes, and who interposes only momentarily to give assistance. If this point were resolved against the plaintiff, the question of proximate cause would still remain.

Whether non-use of the goggles was indeed an independent intervening cause, such as would relieve the defendant of liability, or merely a concurring negligence, which at most would merely reduce the damages recoverable, is not so absolutely certain that the Judge should have decided the question as one of law. The defendant's theory was one that could appropriately be urged upon the jury and it was strongly urged upon them, as permitted under the Judge's charge. The District Judge was correct in refusing to adopt this theory as the law of the case and to impose it mandatorily upon the jury. With full recognition of the force of the defendant's argument, a fair minded man might upon the evidence reasonably conclude to the contrary.

Even if we were disposed to favor the defendant's interpretation of the facts, we would not be permitted to reverse the judgment unless we were prepared to say that there is no rational basis for an impartial mind to reach any other conclusion. We think that under traditional tests of negligence and causation, there is substantial evidence from which a reasoning mind could, without resort to speculation and conjecture, find negligence on the defendant's part which was the proximate cause, or at least a proximate contributing cause, of the plaintiff's injury.

The jury was correctly instructed that there should be no verdict for the plaintiff in any amount unless it found the railroad guilty of negligence which was a proximate cause of the plaintiff's injury. It was likewise correctly instructed as to the legal consequences of contributory negligence on the plaintiff's part. There was no objection to these features of the charge or to any other instruction to the jury. The amount of the verdict, measured against the plaintiff's serious injury, would seem to suggest that the jury judged both employer and employee guilty of negligence proximately causing the injury—a not unsupportable view in the circumstances. As we find no error in the submission of the case to the jury, the judgment will be affirmed.

Affirmed.

2. Rule 723 of the railroad provides:
   "Employees are enjoined to use goggles to prevent eye injuries when engaged in duties requiring their use." (p. 26).