George COPELAND, Appellant,

v.

ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a corporation, Appellee.

No. 6599.

United States Court of Appeals
Tenth Circuit.

May 5, 1961.

Judgment affirmed.

Hal Welch, Hugo, Okl., for appellant.

Ben Franklin of Franklin & Harmon, Oklahoma City, Okl. (James L. Homire, St. Louis, Mo., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, PICKETT, Circuit Judge, and KERR, District Judge.

PICKETT, Circuit Judge.

The plaintiff brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for injuries alleged to have been suffered through the negligence of a fellow employee. The parties stipulated that the case should be tried to the court without a jury upon the testimony of the plaintiff. This is an appeal from a judgment in favor of the defendant railroad in which the court found that the plaintiff's injuries resulted from the unauthorized, "sportive" or "prankish" acts of a fellow employee which were "wholly outside his employment, intended only to further his own interests, and not in the interests of his employer."

The facts are not disputed. The plaintiff, Copeland, was one of four employees engaged in unloading crossties from defendant's boxcars and stacking them in piles along side the tracks. The employees had devised a system of unloading ties pursuant to which one man worked inside the boxcar, one worked outside stacking the ties in a pile, and the remaining two carried the ties from the car to the pile, over a ramp extending from the car door. The duty of the employee inside the car was to remove the ties, which weighed from

200 to 300 pounds each, from their position, and stand them on end at a location where they could be conveniently taken singly by one of the carriers on his shoulder. It was not part of his job to assist in any manner with the balancing of the ties on the carrier's shoulder preparatory to their removal from the boxcar. On one of his trips, the plaintiff was in the process of balancing a tie on his shoulder and removing it from the car when his fellow employee who was working inside the car, as a practical joke, and as a prank, pushed upward on the back end of the tie. This unbalanced the tie which pulled the plaintiff over, and he sustained the injuries complained of.[1]

At the outset, it should be noted that this case does not raise the question of whether the railroad knowingly tolerated the playful or prankish acts complained of, nor that of whether it employed persons of known propensities for such conduct. Neither is it one of that class of cases in which the injury was occasioned by the willful act of an employee attempting to accomplish the master's business in an improper manner. E. g., Steeley v. Kurn, 313 U.S. 545, 61 S.Ct. 1087, 85 L.Ed. 1512; Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082. It is a case submitted on undisputed evidence to the effect that the injury to the plaintiff was caused by a fellow servant who was acting entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer. No contention is made that there was direct negligence on the part of the railroad, instead recovery is sought on the sole theory of respondeat superior.

■■ Section 1 of the F.E.L.A., 45 U.S.C.A. § 51, provides that common carriers by railroad, while engaged in interstate commerce, "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the

---

1. From the plaintiff's testimony, the court found:

"On August 20, 1957, the plaintiff and one Joe Aikins were employees of the defendant in its tie plant in Hugo, and were engaged in unloading untreated railroad ties from one of defendant's railroad cars. They were members of a four man crew, whose members would rotate in the various positions required to unload a carload of ties. The positions were: a 'stander', who would pull the ties loose in the car and stand them on end for the employees who would carry the ties outside the car to the stack; two 'carriers', who would carry the ties; a 'straightener', who would straighten the ties into the stack when dropped by the carriers.

"At the time of the incident complained of by plaintiff, Joe Aikins was working as a stander in the railroad car that was being unloaded, and plaintiff was working as one of the carriers. The regular and usual method of this particular position of the job was for the stander to pull the tie out of the load and to stand it on its end in the car and for the carrier to face the tie, put his shoulder against it and lift it so that it would balance over his shoulder. After the stander stood the tie on its end the

carrier would require no more help of any kind to load the tie on his shoulder and carry it out of the car.

"The incident complained of by plaintiff was that just as he started to lift a particular tie over his shoulder, Joe Aikins, who was standing behind him, in an act of practical joking or fooling, placed his hands on the back end of the tie as it came down over plaintiff's shoulder and kicked up on the back end just as it was about to balance. Plaintiff claims that as a result of this sportive act on the part of Joe Aikins, he received injury to his back.

"After the occurrence, Joe Aikins apologized to plaintiff and told him it was just a joke and asked plaintiff not to say anything about it because he might lose his job.

"The defendant had strict rules against kicking a tie, such as was done in fun by Joe Aikins.

"The sole cause of plaintiff's accident was the kicking of the tie as a practical joke by the other Joe Aikins. Except for the kicking of the tie, the method employed in unloading the tie was usual and ordinary, and plaintiff would have been able to carry the tie without incident."

officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, * * *." Although other provisions abrogate common law defenses to actions brought under the F.E.L.A., it is apparent that a railroad is liable only in those cases in which injury to an employee results from the negligence of the railroad, or of its "officers, agents, or employees" for whose negligence it is responsible. Chesapeake & O. Ry. Co. v. Stapleton, 279 U.S. 587, 49 S.Ct. 442, 73 L.Ed. 861; Erie R. R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L. Ed. 1057; New York Cent. R. R. Co. v. Winfield, 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045; Atlantic Coast Line R. R. Co. v. Massengill, 4 Cir., 264 F.2d 726. The Supreme Court has specifically stated that the statute does not constitute the railroad an absolute insurer of its employees.[2]

The courts have held that an employer is not liable under the F.E.L.A. for assaults by employees upon fellow employees, which assaults are not committed within the scope of the wrongdoers' employment in furtherance of the master's business. Davis v. Green, 260 U.S. 349, 43 S.Ct. 123, 67 L.Ed. 299; Euresti v. Washington Terminal Co., 108 U.S.App.D.C. 81, 280 F.2d 629; Sheaf v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 8 Cir., 162 F.2d 110; Ochsrider v. Reading Co., D.C.E.D.Pa., 172 F.Supp. 830; Tatham v. Wabash R. R. Co., 412 Ill. 568, 107 N.E.2d 735, 33 A.L.R.2d 1287, annotation 1295; Lanners v. Atchison, T. & S. F. Ry. Co., 344 Ill.App. 123, 99 N.E.2d 705; Zoccano v. Long Island R. R. Co., 298 N.Y. 553, 81 N.E.2d 96; Amann v. Northern Pac. Ry. Co., 130 Mont. 11, 292 P.2d 753; Roebuck v. Atchison, T. & S. F. Ry. Co., 99 Kan. 544, 162 P. 1153, L.R.A.1917E, 741;

Osment v. Pitcairn, 349 Mo. 137, 159 S.W.2d 666, certiorari denied 320 U.S. 792, 64 S.Ct. 206, 88 L.Ed. 477; Young v. New York Cent. R. R. Co., 88 Ohio App. 352, 88 N.E.2d 220, certiorari denied 339 U.S. 986, 70 S.Ct. 1008, 94 L. Ed. 1388. This rationale has been applied generally in cases in which an employee was injured by the act of a fellow employee in sport or in play. 35 Am.Jur., Master and Servant, § 201, (1941). It has also been applied in cases of this nature brought under the F.E.L.A. which are collected in Annotation 33 A.L.R.2d 1295, 1309 (1954). Hoyt v. Thompson, 7 Cir., 174 F.2d 284, for example, involved injuries to an employee which were caused by two other employees who were wrestling or scuffling over a bar of soap. It was held that the employees, while so engaged, were not acting in furtherance of the railroad's business. Accord, Blunk v. Atchison, T. & S. F. Ry. Co., 97 Cal. App.2d 229, 217 P.2d 494; Lavender v. Illinois Cent. R. R. Co., 358 Mo. 1160, 219 S.W.2d 353, certiorari denied 338 U.S. 822, 70 S.Ct. 67, 94 L.Ed. 499; Popadines v. Davis, 213 App.Div. 9, 209 N.Y.S. 689; Reeve v. Northern Pac. Ry. Co., 82 Wash. 268, 144 P. 63, L.R.A. 1915C, 37; Griffin v. Baltimore & O. R. R. Co., 98 W.Va. 168, 126 S.E. 571, 40 A.L.R. 1326.

It is urged that under the provisions of Section 1 of the F.E.L.A., the railroad is liable in all cases if either (1) the injury to a workman results "in whole or in part from the negligence of any of the officers, agents or employees of such carrier" regardless of whether the fellow employee is acting within the scope of his employment, or (2) the instrumentality which inflicts the injury is actually in use in the carrier's business, regardless of whether the fellow

2. In Wilkerson v. McCarthy, 336 U.S. 53, 61, 69 S.Ct. 413, 417, 93 L.Ed. 497, the Court said:

"Much of respondents' argument here is devoted to the proposition that the Federal Act does not make the railroad an absolute insurer against personal injury damages suffered by its employees. That proposition is correct, since the Act imposes liability only for negligent injuries. Cf. Coray v. Southern Pac. Co., 335 U.S. 520, [69 S.Ct. 275, 93 L.Ed. 208]."

employee using it at the moment of injury is acting within the scope of his employment. While the trend of recent Supreme Court decisions has been to require cases to be submitted to a jury on meager evidence, and these decisions in effect hold that if there is a scintilla of evidence of employer negligence a factual question is presented,[3] there is no decision which holds that there can be recovery without some fault on the part of the railroad, or without proof of negligent acts of employees for which the railroad is responsible. There is nothing in Sinkler v. Missouri Pac. R. R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799, to the contrary. In that case the determinative question was the liability of a carrier for the negligence of an independent contractor performing functions for the carrier essential to the operation of its railroad. There is nothing new in the decision except the holding that an independent contractor is in the same category as any other agent or employee of the carrier.

■ Although seeming to liberalize the quantum of evidence necessary to constitute a jury question in F.E.L.A. cases, the Supreme Court has been careful to maintain that "the basis of liability under the Act is and remains negligence." Wilkerson v. McCarthy, 336 U.S. 53, 69, 69 S.Ct. 413, 421, 93 L.Ed. 497. For instance, on the same day that the Supreme Court held in three different cases that there was evidence of negligence sufficient to take the cases to a jury or to sustain a verdict in favor

of an employee,[4] the Court held in Herdman v. Pennsylvania R. R. Co., 352 U. S. 518, 77 S.Ct. 455, 456, 1 L.Ed.2d 508, that "a jury question of negligence was not presented by the proofs." We conclude, as did the trial court, that the acts of the fellow employee which caused plaintiff's injury were wholly outside the scope of his employment, intended only to further his own interests, and not those of his employer, and were not chargeable to his employer.

Affirmed.

MURRAH, Chief Judge (dissenting).

If the liability of the employer railroad is to be judged by the common law rule of respondeat superior, the judgment of the trial court is undoubtedly right and ought to be affirmed. For, under that rule, as it has been generally applied in F.E.L.A. cases, a railroad is not liable to an injured employee for the sportive or malicious acts of fellow employees because not done in furtherance of the master's business. But we have been repeatedly admonished that the statutory liability of an employer-railroad to an injured employee is "significantly different from the ordinary common-law negligence action * * *." I. e., see Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 509, 77 S.Ct. 443, 450, 1 L.Ed.2d 493.

We have been reproached for persistent adherence to the principles of common law liability in the face of a Congressional intent to provide a remedy "to meet changing conditions and changing concepts of industry's duty toward

---

3. In Rogers v. Missouri Pac. R. R. Co., 352 U.S. 500, 506, 510, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, the Court said:
   "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. * * *
   " * * * The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in

all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. * * " (Footnotes omitted)

4. Rogers v. Missouri Pac. R. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Webb v. Illinois Cent. R. R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503; Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed. 2d 511.

its workers." Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 398, 2 L.Ed.2d 382; see also Rogers v. Missouri Pacific R. Co., supra. Our reluctance to recognize this conceptual difference had led the Supreme Court to grant certiorari in more F.E.L.A. cases than any other type of litigation. See Mr. Justice Douglas concurring in Wilkerson v. McCarthy, 336 U.S. 53, 71, 69 S.Ct. 413, 93 L.Ed. 497; Mr. Justice Frankfurter dissenting in Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 524, 77 S.Ct. 457, 1 L.Ed.2d 511; Harris v. Pennsylvania R. Co., 361 U.S. 15, 80 S.Ct. 22, 4 L.Ed.2d 1. Out of a series of cases beginning with Wilkerson v. McCarthy, supra, and ending with Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799, has come an unmistakable concept of a statutory liability which is an "avowed departure from the rules of the common law." Id., 356 U.S. at page 329, 78 S. Ct. at page 762. The prevailing opinions in these cases leave no doubt of a disposition to construe Section 1 of the F.E.L.A. as establishing a statutory liability analagous to the common law, yet more like liability without fault. Indeed, the dissenters have accused the majority of giving "lip service" to liability for fault, i. e., see Mr. Justice Jackson dissenting in Wilkerson v. McCarthy, supra, while converting the F.E.L.A. "into what amounts to a workmen's compensation statute." See Mr. Justice Harlan dissenting in Sinkler v. Missouri Pacific R. Co., supra, 356 U.S. at page 332, 78 S.Ct. at page 763. See also Mr. Justice Whittaker dissenting in Moore v. Terminal Railroad Ass'n, 358 U.S. 31, 32, 79 S.Ct. 2, 3 L.Ed.2d 24.

True, most of the cases evidencing the trend involved the sufficiency of the facts to make out a jury case. Of the recent cases, only Sinkler v. Missouri Pacific R. Co., supra, involved the doctrine of respondeat superior. The question there was whether the doctrine operated to insulate the railroad-employer from the negligent acts of its independent con-tractor. While recognizing some common law exceptions to the general rule, based upon the theory of the non-delegable duty of the railroad to its employees, the court was at pains to state that the railroad's liability did not depend upon the common law principles of agency. Liability there rested upon the proposition that "while the common law had generally regarded the torts of fellow servants as separate and distinct from the torts of the employer, holding the latter responsible only for his own torts, it was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor. Hence, a railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respect with sufficient care that his safety while doing his part will not be endangered. If this standard is not met and injury results, the worker is compensated in damages." Id., 356 U.S. at page 330, 78 S.Ct. at page 762.

This "broad purpose" is to control in applying the "standard governing the liability of * * * workers injured on the job." Id., 356 U.S. at page 331, 78 S.Ct. at page 762. I am unable to discern any rational difference between the Sinkler situation and ours. Here the employee was injured in the performance of his duties. His injuries resulted "in whole or in part" from the negligence of a fellow employee while the latter's employment was going on. While the negligent act was not done in furtherance of the master's business, if we are to accord the statutory word "employee" the same "accommodating

scope" and "vitality" given the word "agent" in Sinkler, we are brought to the point of holding the railroad liable. Believing, as I do, that a majority of the Supreme Court would so hold, I must respectfully dissent.