Charles BECKEN and Wilmer S. Morgan, doing business as Becken and Huntley Co., a partnership, Plaintiffs-Appellants,

v.

MANPOWER, INC., a Wisconsin Corporation, Defendant-Appellee.

No. 75–1381.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 1975.

Decided April 5, 1976.

William J. Stevens, Chicago, Ill., for plaintiffs-appellants.

Stephen M. Hallenbeck, Chicago, Ill. for defendant-appellee.

Before PELL and BAUER, Circuit Judges, and WHELAN, District Judge.*

BAUER, Circuit Judge.

This is a diversity case brought against defendant Manpower, Inc. ("Manpower"), who supplied two employees to plaintiffs Becken and Morgan for the task of moving the contents of plaintiffs' jewelry store. Plaintiffs allege that Manpower was negligent in providing workers who not only moved the store's contents but also stole much of the inventory of jewelry and precious stones. The trial court granted the defendant's motion for summary judgment. The question before us is whether Illinois law recognizes a theory of negligent hiring. Because we believe there exist genuine questions of law and material fact we reverse the trial court's granting of the summary judgment.

Many of the facts of the case were presented to the court in the form of depositions and affidavits. Plaintiffs operated a wholesale jewelry business in the downtown area of Chicago, Illinois. They decided to move the location of their business to the Northwest side of the city. They called Manpower believing the defendant to be a supplier of temporary employees who were reliable, bonded and insured. Plaintiff Becken stated that he explained the value and the quantity of merchandise to be moved and requested some reliable and honest men to be assigned the task. According to Becken, Manpower told him that two vacationing window washers were available for the job. In fact the two men assigned, Malcolm Black and John Bowman, were not vacationing window washers, but were convicted felons recently paroled from Illinois penitentiaries.

According to the deposition of George Pintor, Manpower's office manager who received the applications of Black and Bowman, no action was taken to discover if the men had a previous criminal record. Pintor could not recall if the questions on the application dealing with prior convictions were answered in the affirmative. Although Manpower did a standard credit check on plaintiffs no check was made to determine the background of Black or Bowman. Pintor also admitted that Manpower's office managers are trained not to assign Manpower's temporary employees to jobs which still require the employees to directly handle money, jewelry or other valuable items. Manpower was supposed to supply laborers to move valuables only if the men were to handle the items under supervision.

Nevertheless, Bowman and Black were sent to plaintiffs' store and carried cartons, boxes, salesman's cases, jewelry, and catalogs from the truck to the new store. The men could see into many of the boxes and cartons they carried. The move was not completed on the first day (Thursday) so the men were asked to return the following day. All of the moving was completed at about 3:30 p. m. on Friday. At some later time Bowman and Black broke down the back door of the new office and stole plaintiffs' jewelry and stones. The invoice cost of the inventory stolen, less credit for goods recovered, amounted to $25,509.36. Plaintiffs' insurance carrier refused payment. As a result of the theft, plaintiffs were unable to continue their business.

Initially, Manpower claims that the employees were only on a one day assignment and that plaintiffs hired the two men for the second day. However it is clear that

* The Hon. Francis C. Whelan, United States District Court, Central District of California, is sitting by designation.

plaintiffs did not make any direct payment to Bowman or Black for their services. In addition plaintiffs expected Manpower to bill them for both days. The factual question of who employed the thieves could be crucial to the outcome of this case. However the question is one properly reserved for the trial court after hearing all of the evidence.

The more important legal issue at this time, however, is whether Illinois does recognize a theory of negligent hiring. Defendants cite *Pascoe v. Meadowmoor Dairies,* 41 Ill.App.2d 52, 190 N.E.2d 156 (1963) and *Insurance Co. of North America v. Hewitt-Robbins, Inc.,* 13 Ill.App.3d 534, 301 N.E.2d 78 (1973) in support of their argument that plaintiffs have failed to state a recognizable cause of action sounding in negligence. While both decisions tend to reject a negligent hiring theory, the facts in each case are quite different. *Pascoe* involved a situation wherein plaintiffs were assaulted and raped by two men who delivered milk to plaintiffs' delicatessen. Plaintiffs sued the dairy and the distributor claiming that they should have known that the men who attacked plaintiffs were of unsavory character and reputation; and, further, that the employer had a duty to refrain from retaining the services of an employee who has propensities which would make him a threat to third persons to whom the employee is exposed. The court did not reject this theory of negligence but rather said it did not apply since there was no evidence that the attackers were employees of the defendants.

Likewise in the *Hewitt-Robbins* decision the facts are much different than the case now before the Court. There a car hiker, employed by defendant Avis Rent-A-Car to park cars at the airport, was driving along the Indiana Turnpike on a personal vacation trip in an Avis car when he negligently crashed into plaintiff's truck. The court found that the vacation driving was not an act collateral to his employment and thus found no liability flowing from negligently hiring an incompetent driver. Our reading of these two cases does not disclose any

outright rejection by the Illinois courts of a theory of negligent hiring.

In fact there is one Illinois decision, *Tatham v. Wabash R. Co.,* 412 Ill. 568, 107 N.E.2d 735 (1952) which tends to support plaintiffs' case. In *Tatham* the Illinois Supreme Court reversed the trial court's dismissal of a complaint which alleged that the defendant knowingly employed a dangerous man to work with plaintiff, and that it thereby created the hazard which resulted in harm to the plaintiff. The facts indicate the plaintiff, a foreman in defendant's locomotive repair shop, was attacked by another employee without provocation or warning. Allegedly, the attacker was well known as a vicious, contentious, pugnacious and ill-tempered person. Although *Tatham* was a Federal Employers Liability Act case, and even though its facts are clearly distinguishable we still believe it has some precedential value. After reviewing previous F.E.L.A. cases, the Court concluded that a negligence claim could be based upon a theory of negligent hiring, stating:

"In our opinion, the clear and obvious holding of the Lillie case is that when an employer is aware, or should be aware, of conditions creating a likelihood of injury, he has a duty to make provisions against this foreseeable danger, even though the threatened hazard is from the intentional misconduct of third persons."

In deciding that an employer could be negligent in employing a dangerous man and creating an unreasonable risk for third persons it cited with approval the Restatement of Agency 2d Section 213, which states:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

\* \* \* \* \* \*

(b) in the employment of improper person or instrumentalities in work involving risk of harm to others".

The theory of negligent hiring has also been adopted in other jurisdictions. *Hersh v. Kentfield Builders,* 385 Mich. 410, 189 N.W.2d 286 (1971); *Stricklin v. Parsons Stockyard Co.,* 192 Kan. 360, 388 P.2d 824

(1964); *Mallory v. O'Neil*, 69 So.2d 313 (Fla. 1954); *Kendall v. Gore Properties*, 98 U.S. App.D.C. 378, 236 F.2d 673 (1956); *Svacek v. Shelley*, 359 P.2d 127 (Alaska 1961); *Mistleton Express v. Culp*, 353 P.2d 9 (Okl. 1960); see generally Brill, "The Liability of an Employer for Willful Torts of His Servants", 45 *Chi.Kent L.Rev.*, p. 15 (1968); 48 A.L.R.3d 353.

▋ In reversing the trial court's grant of summary judgment we do not wish to express any decision on the eventual outcome of the case. There are a number of factual questions which must be answered before plaintiffs can establish their claim of negligence. For instance: Who employed Bowman and Black for the second day's work? Was it foreseeable that the burglary would result? Was it reasonable for Manpower to take plaintiffs' business considering the type of men regularly in its employ? Did Manpower fulfill its duty to third persons in screening Bowman and Black? Were there any false representations made to plaintiffs about Bowman and Black's previous work experience? Did Bowman and Black plan the burglary while moving the goods? Was the fact that Manpower supplied plaintiffs with movers who were convicted felons the proximate cause of the robbery? Did the defendant's overall conduct involve an unreasonable risk of harm to plaintiff?

These questions present genuine issues of fact that can only be properly decided at trial. Apparently the learned trial judge decided that that the existence of the factual questions was irrelevant since there was an absence of clear-cut Illinois law that recognizes plaintiffs' theory of liability.

▋ As stated previously our own review of the law indicates that while Illinois is not abundant with precedent adopting a theory of negligent hiring, we find no decision which rejects the theory of liability. Thus we believe the trial court should follow the Illinois Supreme Court decision in *Tatham* and the decisions from other jurisdictions which allow a claim based on negligent hiring.

REVERSED and REMANDED.